**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| REGINALD MIMMS, | : | Civil Action No. 09-1284 (JBS) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION AND ORDER** |
| v. | : | |
| U.N.I.C.O.R., et al., | : | |
| Defendants. | : | |

This matter comes once again before the Court for pre-screening under 28 U.S.C. § 1915A upon filing by Plaintiff Reginald Mimms of his re-amended complaint, see Docket Entry No. 13, and it appearing that:

1. On March 23, 2009, the Clerk docketed Plaintiff's original complaint, which: (a) arrived unaccompanied by either Plaintiff's filing fee or his in forma pauperis application; and (b) raised challenges under the Privacy Act. See Docket Entry No. 1.

2. On March 31, 2009, the Court denied Plaintiff in forma pauperis status without prejudice and directed the Clerk to administratively terminate this matter subject to reopening in the event Plaintiff duly submits his filing fee or his in forma pauperis application. See Docket Entry No. 2.

3. On May 1, 2009, the Clerk docketed Plaintiff's in forma pauperis application. See Docket Entry No. 3.

4.  On June 2, 2009, this Court entered an order granting Plaintiff in forma pauperis status and proceeding certain claims raised in Plaintiff's original complaint past sua sponte dismissal.  See Docket Entry No. 5.

5.  On the very same day, that is, on June 2, 2009, the Clerk received Plaintiff's amended complaint.  See Docket Entry No. 4.  While retaining the Privacy Act as Plaintiff's jurisdictional basis, the amended complaint raised a panoply of challenges wholly unrelated to the Privacy Act and no Privacy Act challenges whatsoever.  See id.  Moreover, Plaintiff's amended complaint presented a hard-to-comprehend document consisting of sixty-three paragraphs, stating allegations that appeared facially unrelated to each other and making numerous conclusions unsupported by factual grounds.  See id.

6.  On August 10, 2009, this Court issued an order ("August Order") construing the amended complaint as a superceding pleading and dismissing the amended complaint without prejudice.  See Docket Entry No. 9.  The August Order explained to Plaintiff that Plaintiff could not raise challenges unrelated to the Privacy Act in a matter where the Privacy Act was asserted as the sole jurisdictional basis.  See id. at 5-6.  In addition, the August Order clarified to Plaintiff that Rules 18 and 20 of the Federal Rules of Civil Procedure put certain limitations on the

2

      joinder of defendants and require transactional relationship for the purposes of joinder of claims.  See id. at 6-8 (detailing the operation of the Rules).  Furthermore, the August Order detailed to Plaintiff the pleading standard ensuing from Rule 8, as interpreted in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  See Docket Entry No. 9, at 8-11 (explaining pleading requirements, including the requirement of defendant's personal involvement in the alleged wrong, and explaining the insufficiency of factless or conclusory statements).  The August Order directed Plaintiff to submit his re-amended complaint that would: (a) assert a proper jurisdictional basis; and (b) comply with the requirements of Rules 8, 18 and 20.  See id. at 11-13 (pointing out the shortcomings of Plaintiff's amended complaint and stressing Plaintiff's obligation to file a clear, concise and pleading asserting transactionally related claims).

7. In response to the August Order, Plaintiff did not submit an amended complaint of any kind; rather, he submitted a letter, consisting of irrelevant rhetoric, expressions of Plaintiff's displeasure with this Court and statements that unspecified law professors at Harvard School of Law, New York University School of Law and "Sanford" Law School concluded that Plaintiff's complaint "was a very good

3

      document." See Docket Entry No. 10 (also asserting, inter alia, that the Rules of Civil Procedure are "bogus Rules placed in only to sidetrack Plaintiff," and expressed Plaintiff's belief that "the U.S. District Court clerk [is] practicing law from the court and the court [is] giving out bogus advice and incorrect rules under the name of [j]ustice, [w]hich is a high misdemeanor"). However, since Plaintiff's letter seemed to suggest Plaintiff's interest in asserting certain claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Court issued an order extending Plaintiff's period to file a re-amended complaint to set forth a claim for constitutional violation under Bivens. See Docket Entry No. 11.

8. On October 21, 2009, the Clerk docketed Plaintiff's re-amended complaint. See Docket Entry No. 13. Although the Court's August Order directed Plaintiff to file a *clear and concise re-amended pleading complying with requirements of Rules 8, 18 and 20*, Plaintiff's latest submission:

    a. presented a rambling and patchy narrative consisting of the same number of paragraphs, that is, sixty-three paragraphs, see id., and

    b. raised unrelated challenges, one line of which seems to relate at the events that took place when Plaintiff was

4

   confined at the Federal Correctional Facility at Allenwood ("Allenwood"), while another line seemed to be based on the events that took place after Plaintiff was transferred from Allenwood to the Federal Correctional Facility at Fort Dix ("Fort Dix").  <u>See id.</u>  The third line of claims, stated even more vaguely, appears to relate to the events that took place at a Lewisburg prison facility ("Lewisburg").[1]

9.  This re-amended complaint named the following persons as Defendants:

  a.  Defendant Eobstel, allegedly the head of UNICOR (which, in turn, was defined by Plaintiff as a factory belonging to the Bureau of Prisons ("BOP"));

  b.  Defendant Elias, allegedly an employee at UNICOR;

  c.  Defendant Mishika, allegedly another employee at UNICOR;

  d.  Defendants Meyers, Lawhorn, Fisher and Patraw, who are, allegedly, UNICOR employees acting in supervisory capacities;

  e.  UNICOR itself;

  f.  the BOP; and

  g.  certain unspecified "DOES 1-10."

---

[1] The re-amended complaint does not indicate even the period of time when Plaintiff was confined in Lewisburg. However, the overall impression from the re-amended complaint suggests that Plaintiff was confined in Lewisburg many years ago.

Id. at 1-3.[2]

10. Those allegations in the re-amended complaint that were stated with at least some degree of clarity (meaning, the allegations the sense of which this Court was able to either glean or at least try to guess from the face of Plaintiff's re-amended complaint), seem to assert the following four claims:

   a. Sometimes during the fall of 2007, certain officials at UNICOR (one of whom was Defendant Fisher and the rest of whom are not identified) decided not to promote Plaintiff to a higher position (while Plaintiff was working at the UNICOR), and Plaintiff's employment at UNICOR was eventually terminated, seemingly, during the spring of 2008. Plaintiff seems to maintain that such failure to promote and/or termination of his employ violated his constitutional rights.

---

[2] Three other individuals are referred to in the re-amended complaint and might have been intended as Defendants: Walsh, Biederback and Wiget. See Docket Entry No. 13, at 8. However, none of these individuals is identified either in the caption or in the chapter of the re-amended complaint listing all the parties. See id. at 1-3. The Court is left to guess the positions of Walsh, Biederback and Wiget; the best the Court could surmise from the context of Plaintiff's references to these persons is that Walsh, Biederback and Wiget are correctional officers at Fort Dix. Finally, the re-amended complaint also makes a reference to three other persons' names, apparently, Fritz, Findley and Angelini, see id. at 19, but does not state any facts whatsoever with regard to these persons.

    b.    Later on, seemingly in June of 2008, Plaintiff was transferred from Allenwood to Fort Dix. Plaintiff seems to assert that the fact of such transfer, too, violated his constitutional rights.

    c.    It appears that, upon his arrival at Fort Dix (the Court presumes, in June of 2008), Plaintiff filed grievances with Fort Dix officials challenging certain denial of medical care during the time he was incarcerated in Lewisburg.[3] Plaintiff asserts that, on unspecified day, he was approached by unspecified staff member (of, the Court presumes, Fort Dix facility) who tried, through unspecified means, to "deter [Plaintiff] from filing on their co-workers." Also, according to the re-amended complaint, almost one year later (that is, on May 14, 2009), Plaintiff filed an administrative grievance against Defendant Meyers (the Court presumes, complaining about his non-promotion at UNICOR and/or about the termination of his UNICOR employment), in response to which unspecified "Defendants banded together to make terroristic threats and other

---

[3] It is unclear why Plaintiff decided to file grievances with Fort Dix officials complaining about the actions of Lewisburg prison officials. (No statement made in the re-amended complaint suggests that Plaintiff's administrative submission made in Fort Dix was a Federal Tort claim; rather, Plaintiff's reference to "BP-8 form" suggests an administrative grievance subject to informal resolution).

        harassing acts to deter [P]laintiff from filing." Plaintiff seems to assert that these unspecified oral threats/harassment violated his constitutional rights.

    d.    On May 6, 2009, Defendant Meyers allegedly retaliated against Plaintiff (for filing an administrative grievance against Meyers); Meyers, allegedly, did so by filing a report, which Plaintiff qualified as a "false incident" report.[4]  Plaintiff seems to assert that Meyers' action violated Plaintiff's constitutional rights.

Docket Entry No. 13, at 4-6.

11.  Plaintiff also asserts that the foregoing allegations must state a "failure-to-protect" claim. <u>See</u> <u>id.</u> at 6.

12.  In addition, Plaintiff supplements the aforesaid allegations with plenty of surplusage or conjecture which the Court cannot construe as factual allegations of any kind. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 6-8 (making the following statements: "The Police Code was put in effect!" "The Defendants under the Government direction is 'A State of Nature' is a condition where everyone runs wild," "History has shown that Black Men in America had suffered from Racial Discrimination and

---

[4] While Plaintiff's re-amended complaint asserted that Meyers' report was attached to the re-amended complaint as an appendix, no such appendix was attached in actuality.

      Racial Hate, evil lies and false reports written by racist men").

13. Finally, Plaintiff's re-amended complaint is accompanied by another document titled "KNOW ALL MEN BY THESE PRESENTS," see Docket Entry No. 13, at 21, a fourteen-paragraph single-spaced page of wholly factless conclusions, that is, without providing "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2), Fed. R. Civ. P.[5] Since these claims are wholly untethered to factual allegations, they do not constitute a "showing", and they cannot be addressed by this Court intelligibly and will be dismissed with leave to replead. The repleading requirements have been set forth herein. See Ashcroft, 129 S. Ct. 1937, Twombly, 550 U.S. 544, and Phillips, 515 F.3d at 230-34.

14. Plaintiff's claims against "Does 1-10" will be dismissed with prejudice for failure to state any allegations against these Defendants. See Ashcroft, 129 S. Ct. 1937.

---

[5] For instance, in addition to asserting, without any dates, facts, or even remote references to any particular acts by any particular Defendants, Plaintiff asserts that he was denied access to the court, telephone, mail, and that his mail was destroyed or illegally tampered with. See Docket Entry No. 13, at 21. In addition, Plaintiff makes several references to "being given the gaslight treatment," without explaining either the meaning of this term or stating any dates, facts and particular Defendants involved in this so-called "gaslight treatment."

15. Plaintiff's claims against all other Defendants will also be dismissed. Specifically:

    a. Plaintiff's allegations based on Defendants' failure to give him a job promotion or allegations based on the fact of his termination from UNICOR will be dismissed with prejudice. In <u>Bivens</u>, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001). However, since it is long established that "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner," <u>Sandin v. Conner</u>, 515 U.S. 472, 478 (1995), Plaintiff's employment-related allegations do not state a claim: prisoners have no protected liberty or property interest in retaining prison employment ( or, moreover, in prison employment promotion). See <u>Bulger v. United States Bureau of Prisons</u>, 65 F.3d 48 (5th Cir. 1995) (federal inmate has no liberty or property interest in a Federal Prison Industries Job assignment); <u>James v. Quinlan</u>, 866 F.2d 627 (3d Cir. 1989) (same); <u>Garza v. Miller</u>, 688 F.2d 480, 486 (7th Cir. 1982).

    b.    Plaintiff's allegations based on his transfer from Allenwood to Fort Dix (or on Plaintiff's transfer from one cell in Fort Dix to another cell in Fort Dix) will be dismissed with prejudice, since it is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular place of confinement.  <u>See</u>, <u>e.g.</u>, <u>Olim v Wakinekona</u>, 461 U.S. 238, 245-46 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976).

    c.    Plaintiff's allegations based on unspecified oral "threats and harassment" (apparently unaccompanied by any physical violence by Defendants) will be dismissed with prejudice for failure to state a claim, since acts of verbal harassment cannot qualify as violations of the Eighth Amendment.  <u>See</u> <u>Stepney v. Gilliard</u>, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms.  'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting <u>Shabazz v. Pico</u>, 994 F. Supp. 460, 474

11

(S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me. 2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed. App'x 203, 205 (10th Cir. 2004); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)).

d. Plaintiff's assertions that he was denied medical care while in confinement at Lewisburg will be dismissed, since it appears self-evident from Plaintiff's re-amended complaint that none of the Defendants (who are INICOR employees) could have been personally involved in such denial of medical care and, in addition, Plaintiff does not specify any serious medical needs he had, the medical care he requested, the medical care he received (and/or was denied) and the time frame of these events. However, such dismissal will be without prejudice. Thus, provided that these claims are not time barred, Plaintiff may re-state these claims in his

      re-re-amended complaint (upon naming the proper defendants) with the specificity required by Iqbal.[6]

e. Plaintiff's retaliation claim(s) will be also dismissed without prejudice. In order to state a retaliation claim under the First Amendment, Plaintiff must assert facts showing that: (i) he engaged in a protected activity; (ii) Defendants' retaliatory actions were sufficient to deter a person of ordinary firmness from exercising his/her rights, and (iii) there was a causal connection between the protected activity and the retaliatory action. See Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007). Here, Plaintiff asserts that, on May 14, 2009, he filed an administrative grievance against Meyers. However, Meyers' alleged "retaliatory" action (that is, Meyers' alleged filing of the "false incident" report) took place on May 6, 2009, that is, a week *prior* to Petitioner's filing of his administrative grievance against Meyers.[7] Therefore,

---

[6] In addition, Plaintiff's claims based on his confinement in Lewisburg should transactionally relate to the remainder of his re-re-stated claims, if any, pursuant to Rules 18 and 20. If allegations about denial of medical care elsewhere do not relate to his present claims arising at Fort Dix, such claims may not be stated in the next amended complaint. Instead, Mr. Mimms would have to file such unrelated claims in a separate complaint filed in a court of competent jurisdiction and venue where such cause of action arose.

[7] Solely for the purposes of this Memorandum Opinion and Order (but not for the purposes of substantive disposition of

13

it is self-evident that there cannot be a causal connection between the alleged protected activity and the alleged retaliatory action, since the protected activity (filing a grievance) occurred after Meyers' alleged retaliatory act. However, since the patchy drafting style of Plaintiff's re-amended complaint prevents this Court from being certain that Plaintiff wished to base his retaliation claim on the administrative grievance he filed against Meyers and/or on Meyer's incident report, the Court would allow Plaintiff a chance to replead his retaliation claim to make certain that Plaintiff has an opportunity to correlate his alleged protected activity to each alleged subsequent retaliatory action, if any.

16. Plaintiff's two other lines of conclusory allegations, that is, that Defendants are liable for failure to protect him and for violation of the Equal Protection Clause, will be dismissed with prejudice. Specifically:

   a. Since prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the *safety* of the inmates," Farmer v. Brennan, 511 U.S. 825, 832 (1994) (emphasis supplied), an inmate may

---

this matter or the Court's screening of Plaintiff's future filings that might be received in this matter), the Court presumes that the action taken by Meyers was a sufficient deterrent.

14

prevail on an Eighth Amendment failure-to-protect claim if he demonstrates "that he is incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834, and that the prison officials involved acted with a sufficiently culpable state of mind. See id. at 838. (i.e., the inmate must show that the official "knows of and disregards an excessive risk to inmate *health or safety*). Here, however, Plaintiff's re-amended complaint unambiguously indicates that the events at issue did not present any situation where Plaintiff's health or life were at risk. Therefore, regardless of Plaintiff's conclusory allegation of Defendants' actions as "failure to protect," Plaintiff's factual averments do not suggests even a vague possibility, moreover plausibility, of such claim, and the "failure to protect" claim will be dismissed, pursuant to the holding of Iqbal.

b. Plaintiff's equal protection claim will be dismissed for the same reason. Plaintiff makes this allegation on the basis of discussion of a historic event, see Docket Entry No. 13, at 8-10, which had no relation to Plaintiff personally. Stripped of this historic reference, Plaintiff's equal protection claim is limited to: (a) the fact that Plaintiff is African-

>American; and (b) Plaintiff's self-serving conclusion that any prison event that Plaintiff perceives as unfavorable to him must be a discriminatory action. However, this cannot possibly be construed as a viable equal protection claim.

17. Plaintiff's numerous state law claims will be dismissed without prejudice, since -- at this juncture -- the Court has no assurances that it has a viable federal basis to retain jurisdiction over this matter.[8]  Unless there is a viable federal claim, the Court cannot exercise supplemental jurisdiction over related or unrelated state law claims, see 28 U.S.C. § 1367(c).  This dismissal is without prejudice to Plaintiff's right to replead claims against these defendants arising at state law that arise from the same action or occurrence plead in his federal claims, see 28 U.S.C. § 1367(a).

   IT IS therefore on this __**29th**__ day of **January**, **2010**,

   ORDERED that the Clerk shall reopen this matter to entertain Plaintiff's re-amended complaint, Docket Entry No. 13, by making a new and separate entry on the docket reading "CIVIL CASE REOPENED"; and it is further

---

[8] No statement made in this Memorandum Opinion and Order shall be construed as suggesting the Court's position that Plaintiff's state claims are either meritless or meritorious.

ORDERED that Plaintiff's re-amended complaint, Docket Entry No. 13, is dismissed. Such dismissal is as follows: Plaintiff's allegations asserting: (a) denial of medical care by certain prison officials, (b) retaliatory actions by certain prison officials, and (c) denial of access to the courts and destruction of legal mailing, are dismissed without prejudice to repleading, while the remainder of Plaintiff's claims are dismissed with prejudice; and it is further

ORDERED that Plaintiff may file a re-re-amended complaint curing the deficiencies of his re-amended complaint within thirty (30) days from the date of entry of this Memorandum Opinion and Order; and it is further

ORDERED that, in the event Plaintiff elects to file a re-re-amended complaint, he must comply with this Order and with the pleading requirements of Rules 8, 18 and 20;[9] and it is further

ORDERED that, in the event Plaintiff timely files a re-re-amended complaint, the Court will direct the Clerk to reopen this

---

[9] In other words, the re-re-amended complaint *must be a clear and concise document* stating what particular event took place, when it occurred, how it occurred and which Defendants were involved. To illustrate, a hypothetical claim might read as follows: "On November 1, 2009, I had a deep bleeding cut on my arm and, on the same day, asked medical doctor John Jones for medical assistance, but John Jones deliberately refused to provide me with any medical help leaving my arm bleeding for one week and causing me to suffer a serious blood infection." The Court stresses that no pleadings consisting of dozens of paragraphs will be entertained, same as Plaintiff's lengthy narratives or Plaintiff's claims based on events that are wholly unrelated transactionally, for such narratives are neither "short" nor "plain" as Rule 8(a) requires.

matter and will screen the re-re-amended complaint for <u>sua</u> <u>sponte</u> dismissal; and it is further

ORDERED the Clerk shall serve a copy of this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail, together with a blank civil complaint form; and it is finally

ORDERED that the Clerk shall administratively terminate this matter by making a new and separate entry on the docket reading "CIVIL CASE CLOSED."


                                          **s/ Jerome B. Simandle**
                                          JEROME B. SIMANDLE
                                          United States District Judge