<u>**UNITED STATES DISTRICT COURT**</u>
<u>**DISTRICT OF NEW JERSEY**</u>

```
                                    :
REGINALD MIMMS,                     :
                                    :
              Plaintiff             :     Civil Action No. 09-1284 (JBS)
                                    :
         v.                         :
                                    :     MEMORANDUM OPINION
U.N.I.C.O.R., et al.,               :
                                    :
              Defendants.           :
                                    :
```

This matter comes before the Court upon Plaintiff's filing of his re-re-amended complaint, <u>see</u> Docket Entry No. 15, and Plaintiff's application to appoint him <u>pro</u> <u>bono</u> counsel. <u>See</u> Docket Entry No. 16.

**I.    <u>PROCEDURAL BACKGROUND</u>**

On March 23, 2009, the Clerk docketed Plaintiff's original complaint, which arrived unaccompanied by either Plaintiff's filing fee or his <u>in forma pauperis</u> application. <u>See</u> Docket Entry No. 1. The original complaint raised challenges under the Privacy Act. <u>See</u> <u>id.</u>

On March 31, 2009, the Court denied Plaintiff <u>in forma pauperis</u> status, without prejudice, and directed the Clerk to administratively terminate this matter subject to reopening in the event Plaintiff duly submits his filing fee or his <u>in forma pauperis</u> application. <u>See</u> Docket Entry No. 2. On May 1, 2009,

the Clerk docketed Plaintiff's <u>in</u> <u>forma</u> <u>pauperis</u> application.
<u>See</u> Docket Entry No. 3.

On June 2, 2009, this Court entered an order granting
Plaintiff <u>in</u> <u>forma</u> <u>pauperis</u> status and proceeding certain claims
raised in Plaintiff's original complaint past <u>sua</u> <u>sponte</u>
dismissal.  <u>See</u> Docket Entry No. 5.  However, on the very same
day (that is, on June 2, 2009), the Clerk received Plaintiff's
amended complaint.  <u>See</u> Docket Entry No. 4.  While retaining the
Privacy Act as Plaintiff's jurisdictional basis, the amended
complaint raised a panoply of challenges wholly unrelated to the
Privacy Act and no Privacy Act challenges whatsoever.  <u>See</u> <u>id.</u>
Moreover, Plaintiff's amended complaint presented a hard-to-
comprehend document consisting of sixty-three paragraphs, stating
allegations that appeared facially unrelated to each other and
making numerous conclusions unsupported by factual
grounds.  <u>See</u> <u>id.</u>

On August 10, 2009, this Court issued an order ("August
Order") construing the amended complaint as a superceding
pleading and dismissing the amended complaint without prejudice.
<u>See</u> Docket Entry No. 9.  The August Order explained to Plaintiff
that Plaintiff could not raise challenges unrelated to the
Privacy Act in a matter where the Privacy Act was asserted as the
sole jurisdictional basis.  <u>See</u> <u>id.</u> at 5-6.  In addition, the
August Order clarified to Plaintiff that Rules 18 and 20 of the

Federal Rules of Civil Procedure put certain limitations on the joinder of defendants and require transactional relationship for the purposes of joinder of claims.  <u>See</u> <u>id.</u> at 6-8 (detailing the operation of the Rules).  Furthermore, the August Order exhaustively detailed to Plaintiff the pleading standard ensuing from Rule 8, as interpreted in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008).  <u>See</u> Docket Entry No. 9, at 8-11.  The August Order directed Plaintiff to submit his re-amended complaint that would assert a proper jurisdictional basis and comply with the requirements of Rules 8, 18 and 20.  <u>See</u> <u>id.</u> at 11-13 (pointing out the shortcomings of Plaintiff's amended complaint and stressing Plaintiff's obligation to file a clear, concise and pleading asserting transactionally related claims).

In response to the August Order, Plaintiff did not submit an amended complaint of any kind; rather, he submitted a letter, dedicated to irrelevant rhetoric, expressions of Plaintiff's displeasure with this Court and to statements that unspecified law professors at Harvard School of Law, New York University School of Law and "Sanford" Law School concluded that Plaintiff's complaint "was a very good document."  <u>See</u> Docket Entry No. 10 (also asserting, <u>inter</u> <u>alia</u>, that the Rules of Civil Procedure are "bogus Rules placed in only to sidetrack Plaintiff," and

3

expressed Plaintiff's belief that "the U.S. District Court clerk [is] practicing law from the court and the court [is] giving out bogus advice and incorrect rules under the name of [j]ustice, [w]hich is a high misdemeanor"). However, since Plaintiff's letter seemed to suggest Plaintiff's interest in asserting certain claims under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Court issued an order extending Plaintiff's period to file a re-amended complaint. <u>See</u> Docket Entry No. 11.

On October 21, 2009, the Clerk docketed Plaintiff's re-amended complaint. <u>See</u> Docket Entry No. 13. Although the Court's August Order directed Plaintiff to file a clear and concise re-amended pleading complying with requirements of Rules 8, 18 and 20, Plaintiff's re-amended complaint presented a patchily-stated narrative consisting of the same number of paragraphs as his amended complaint (that is, sixty-three paragraphs, <u>see id.</u>) and raises seemingly unrelated challenges, one line of which seems to relate at the events that took place when Plaintiff was confined at the Federal Correctional Facility at Allenwood ("Allenwood"), while another line seemed to be based on the events that took place after Plaintiff was transferred from Allenwood to the Federal Correctional Facility at Fort Dix ("Fort Dix"). <u>See id.</u> The third line of claims, stated even more vaguely, appears to relate to the events that took place at

4

a Lewisburg prison facility ("Lewisburg").  The re-amended
complaint named the following persons as Defendants: (a)
Defendant Eobstel ("Eobstel"), allegedly the head of UNICOR
(which, in turn, was defined by Plaintiff as a factory belonging
to the Bureau of Prisons ("BOP")); (b) Defendant Elias ("Elias"),
allegedly an employee at UNICOR; (c) Defendant Mishika
("Mishika"), allegedly another employee at UNICOR; (d) Defendants
Meyers, Lawhorn, Fisher and Patraw ("Meyers," "Lawhorn," "Fisher"
and "Patraw," respectively), who were, allegedly, UNICOR
employees acting in supervisory capacities; (e) UNICOR itself;
(f) the BOP; and (g) certain unspecified "DOES 1-10."[1]  See id.
at 1-3.

   The allegations stated in the re-amended complaint with at
least some degree of clarity (i.e., the allegations that this

_____

   [1]  The Court's screening of Plaintiff's re-amended complaint
also contained the following observation:

   Three other individuals are referred to in the
   re-amended complaint and might have been intended as
   Defendants: Walsh, Biederback, and Wiget.  However,
   none of these individuals is identified either in the
   caption or in the chapter of the re-amended complaint
   listing all the parties.  The Court is left to guess
   the positions of Walsh, Biederback and Wiget; the best
   the Court could surmise from the context of Plaintiff's
   references to these persons is that Walsh, Biederback
   and Wiget are correctional officers at Fort Dix.
   Finally, the re-amended complaint also makes a
   reference to three other persons' names, apparently,
   Fritz, Findley, and Angelini but does not state any
   facts whatsoever with regard to these persons.

Docket Entry No. 14, at 6, n.2 (citations removed).

Court was able to either glean or at least try to guess from the face of Plaintiff's re-amended complaint), appeared to assert the following four claims:

a.   Sometimes during the fall of 2007, while Plaintiff was working at the UNICOR, certain officials at UNICOR decided not to promote Plaintiff to a higher position and eventually terminated Plaintiff's UNICOR employment (seemingly, sometimes during the spring of 2008).  Plaintiff stated that such failure to promote and/or termination of his employ violated his constitutional rights.

b.   Later on, seemingly in June of 2008, Plaintiff was transferred from Allenwood to Fort Dix.  Plaintiff stated that such transfer, too, violated his constitutional rights.

c.   Upon his arrival to Fort Dix, Plaintiff filed grievances challenging certain denial of medical care during the time he was incarcerated in Lewisburg.  Plaintiff's re-amended complaint asserts that, on an unspecified day, Plaintiff was approached by an unspecified staff member (presumably, of the Fort Dix facility) who tried, through unspecified means, to "deter [Plaintiff] from filing on their co-workers." Also, according to the re-amended complaint, almost one year later (that is, on May 14, 2009), Plaintiff filed an administrative grievance against Defendant Meyers

(presumably, complaining about his non-promotion at UNICOR
and/or about the termination of his UNICOR employment), in
response to which unspecified "Defendants banded together to
make terroristic threats and other harassing acts to deter
[P]laintiff from filing." Plaintiff also stated that such
unspecified oral threats/harassment violated his
constitutional rights.

d.   According to the re-amended complaint, on May 6, 2009,
Defendant Meyers retaliated against Plaintiff for
Plaintiff's filing of an administrative grievance against
Meyers: Meyers, allegedly, did so by filing a report, which
Plaintiff qualified as a "false incident" report. Plaintiff
claimed that such actions violated Plaintiff's
constitutional rights. See Docket Entry No. 13, at 4-6.

In addition to the foregoing, Plaintiff's re-amended
complaint asserted, without underlying facts, that Plaintiff was
stating a "failure-to-protect" claim. See id. at 6. Moreover,
Plaintiff supplemented his allegations in the re-amended
complaint with rhetoric which the Court either could not construe
as factual allegations of any kind or has to presume that these
allegations state Plaintiff's self-serving conjecture. See,
e.g., id. at 6-8 (making the following statements: "The Police
Code was put in effect!" "The Defendants under the Government
direction is 'A State of Nature' is a condition where everyone

7

runs wild," "[Defendants] falsely implicat[ed] Plaintiff in an offense [through] false reports, false e-mails, mail and wire by phone [sic.] mail fraud," "History has shown that Black Men in America had suffered from Racial Discrimination and Racial Hate, evil lies and false reports written by racist men"). Finally, Plaintiff's re-amended complaint arrived accompanied by another document, titled "KNOW ALL MEN BY THESE PRESENTS," see Docket Entry No. 13, at 21, a fourteen-paragraph single-spaced page of wholly factless conclusions, some of which had no meaning whatsoever.[2]

On January 29, 2010, this Court issued a memorandum opinion and order ("January Order") dismissing Plaintiff's re-amended complaint. See Docket Entry No. 14. Specifically, the Court dismissed, without prejudice, all claims that were wholly factless, since these claims could not be addressed by this Court intelligibly. See id. at 9 (citing Iqbal, 129 S. Ct. 1937; Twombly, 550 U.S. 544; and Phillips, 515 F.3d at 230-34).

Plaintiff's claims against "Does 1-10" were similarly dismissed, although with prejudice, for failure to state any

---

[2] For instance, in addition to asserting, without any dates, facts, or even remote references to any particular acts by any particular Defendants, Plaintiff asserted that he was denied access to the court, telephone, mail, and that his mail was destroyed or illegally tampered with. See Docket Entry No. 13, at 21. In addition, Plaintiff made several references to "being given the gaslight treatment," without explaining either the meaning of this term or stating any dates, facts and particular Defendants involved in this "gaslight treatment."

allegations against these Defendants. See id. (citing Iqbal,
129 S. Ct. 1937).  Plaintiff's claims against all other
Defendants were also dismissed in the following fashion:

a.    Plaintiff's allegations based on Defendants' failure to give
      him a job promotion or allegations based on the fact of his
      termination from UNICOR were dismissed with prejudice, with
      an explanation that, not only "the Due Process Clause does
      not protect every change in the conditions of confinement
      having a substantial adverse impact on the prisoner," id. at
      10 (quoting Sandin v. Conner, 515 U.S. 472, 478 (1995), but
      Plaintiff's employment-related allegations could not state a
      claim simply because prisoners have no protected liberty or
      property interest in retaining prison employment and,
      certainly, in employment promotion.  See id. (citing Bulger
      v. United States Bureau of Prisons, 65 F.3d 48 (5th Cir.
      1995); James v. Quinlan, 866 F.2d 627 (3d Cir. 1989); and
      Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982)).

b.    Plaintiff's allegations based on his transfer from Allenwood
      to Fort Dix (or on Plaintiff's transfer from one cell in
      Fort Dix to another cell in Fort Dix) were also dismissed
      with prejudice, with an explanation that a prisoner
      possesses no liberty interest arising from the Due Process
      Clause in a particular place of confinement.  See id. at 11

(citing <u>Olim v Wakinekona</u>, 461 U.S. 238, 245-46 (1983);

<u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976)).

c.   Plaintiff's allegations based on unspecified oral "threats

and harassment," unaccompanied by any physical violence by

Defendants, were analogously dismissed with prejudice, with

an explanation that acts of verbal harassment cannot qualify

as violations of the Eighth Amendment.  See <u>id.</u> at 11

(citing <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n.3 (10th Cir.

2001); <u>Moore v. Morris</u>, 116 Fed. App'x 203, 205 (10th Cir.

2004); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 738 (9th Cir. 1997);

<u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979);

<u>Stepney v. Gilliard</u>, 2005 U.S. Dist. LEXIS 31889, at *19

(N.J.D. Dec. 8, 2005); <u>Collins v. Graham</u>, 377 F. Supp. 2d

241, 244 (D. Me. 2005); <u>Robinson v. Taylor</u>, 2005 U.S. Dist.

LEXIS 20951, at *8-9 (D. Del. Sept. 26, 2005); <u>Shabazz v.

Pico</u>, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); and <u>Prisoners'

Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 187-89 (D.N.J.

1993).

d.   Plaintiff's two other lines of conclusory allegations, that

is, that Defendants were liable for failure to protect him

and for violation of the Equal Protection Clause, were

similarly dismissed with prejudice, with an explanation of

the pertinent tests set forth in <u>Farmer v. Brennan</u>, 511 U.S.

825, 832-38 (1994), and with a clarification that any

allegation merely based on discussion of a historic event (having no factual relevance to Plaintiff personally) cannot be construed as a viable equal protection claim. <u>See</u> Docket Entry No. 14, at 14-16.

e.   In contrast, two lines of Plaintiff's claims were dismissed without prejudice. Specifically, Plaintiff was granted leave to amend his assertions that he was denied medical care while in confinement at Lewisburg. <u>See id.</u> at 11-13. The Court explained to Plaintiff that Plaintiff had to name proper defendants for the purposes of his medical care claims (since it was self-evident that none of the named Defendants, all of whom were UNICOR employees, could have been personally involved in any denial of medical care). <u>See id.</u> at 12. In addition, the Court explained to Plaintiff that Plaintiff was obligated to state facts as to the serious medical needs he had, the medical care he requested, the medical care he received (and/or was denied) and the time frame of these events. <u>See id.</u> However, such dismissal was without prejudice. Thus, provided that these claims are not time barred, Plaintiff may re-state these claims in his re-re-amended complaint (upon naming the proper defendants) with the specificity required by <u>Iqbal</u>. The Court also stressed that these medical care claims had to be transactionally related to Plaintiff's

11

original UNICOR claims, or raised against Defendants
implicated in Plaintiff's original UNICOR claims, pursuant
to the requirements posed by Rules 18 and 20.  See id. at
13, n.6.

f.   Plaintiff's retaliation claim(s) were also dismissed without
prejudice, with a clarification of the applicable tests
posed by the First Amendment, as interpreted in Jean W. v.
Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007), and with an
explanation that Plaintiff's assertion that he was
retaliated by Meyers in response to Plaintiff's May 14,
2009, administrative grievance was facially without merit,
since Meyer's alleged retaliation (i.e., alleged filing of
the "false incident" report) took place on May 6, 2009, that
is, a week prior to Petitioner's filing of his
administrative grievance against Meyers.

In sum, the Court's January Order allowed Plaintiff to amend
his retaliation claim(s) by stating a coherent chain of
retaliatory events, and Plaintiff's medical care claims, provided
that Plaintiff would name proper defendants and state the exact
facts of denial of care for his serious medical need.  See
generally, Docket Entry No. 14.

In response, Plaintiff submitted his re-re-amended
complaint, that is, the fourth round of Plaintiff's pleadings.

<u>See</u> Docket Entry No. 15.  The Court, therefore, now pre-screens, once again, these new pleadings for <u>sua</u> <u>sponte</u> dismissal.

## II.  <u>PLAINTIFF'S PRESENT ALLEGATIONS</u>

Plaintiff's re-re-amended complaint names, again, the following parties as Defendants: (a) Eobstel; (b) Elias; (c) Mishika; (d) Meyers; (e) Lawhorn; (f) Fisher; and (g) Patraw. <u>See</u> Docket Entry No. 15, at 1.  In addition, six persons mentioned in Plaintiff's re-amended complaint (<u>i.e.</u>, Walsh, Biederback, Fritz, Wiget, Findley and Angelini, <u>see</u> <u>infra</u>, note 1) are also named as Defendants in the caption of the re-re-amended complaint.  <u>See</u> <u>id.</u>  Moreover, five new persons are listed therein, namely, "Gosa," "Knox," "Fuentos," "Davis" and "Dixon."  <u>See</u> <u>id.</u>

However, only three Defendants are mentioned in the allegations stated by Plaintiff: the re-re-amended complaint is silent, once again, about any wrongful actions (or any actions of any kind) by the enlarged-for-no-reason ranks of Defendants.

Plaintiff's re-re-amended allegations could be subdivided into three groups.  The first group reads as follows:

> I complained to Eobstel about Meyers violating my rights regarding UNICOR/BOP policies . . . and about destroying my locker (loc[k] that was put on a work locker to secure UNICOR property in my control and was told [presumably, by Eobstel, that] I would not be reimbursed and [that] "In the big scheme of things, your complaints are not critical to the orderly running of UNICOR."  I complained to Lawhorn . . . about Meyers harassing/intimidating behavior, and was told [presumably, by Lawhorn,] "Do you believe in God[?]

13

Th[e]n leave this man alone" and "Stay away from guys
like that."

Docket Entry No. 15, at 10.

Plaintiff's allegations against Meyers or Lawhorn do not
state a claim.  As the Court already explained in its January
Order, the United States Constitution is not a civility code,
and Meyers' intimidating behavior and verbal harassment
unaccompanied by any physical actions, while undoubtedly quite
regretful on a personal level, do not give rise to any Section
1983 liability: that is why these claims were already dismissed
with prejudice.  A fortiori, Lawhorn's alleged expressions of
his regret (that certain UNICOR officials might be so uncivil
that one shall strive to minimize one's interactions with these
officials) does not give rise to any liability.

Plaintiff's newly asserted claim that Eobstel ignored
Plaintiff's complaints about the broken lock is also deficient.
For claims sounding in tort, the extent of the United States's
waiver of sovereign immunity is governed by the Federal Tort
Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80.  See
White-Squire v. U.S. Postal Service, 592 F.3d 453, 2010 WL
293048, *2 (3d Cir. 2010).  Thus, when suing an agency of the
United States in tort, a plaintiff must comply with the FTCA's
procedural requirements.  See id.  Therefore, if Plaintiff's
claims fall outside the FTCA's limited waiver of sovereign

14

immunity, the Court will lack subject-matter jurisdiction to adjudicate them.

The FTCA requires exhaustion of administrative remedies before initiating suit.  It provides that "[a]n action shall not be instituted for money damages for injury . . . unless the claimant shall first have presented the claim to the appropriate Federal agency," and that claim has been finally denied by that agency in writing.  See 28 U.S.C. § 2675.  As this is a jurisdictional requirement, it should be followed strictly.  See Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003).

Here, Plaintiff's re-re-amended complaint does not assert that Plaintiff's claim as to his broken lock was duly exhausted under the FTCA.  Therefore, this Court is without jurisdiction to address this claim, and is constrained to dismiss it.

Plaintiff's second group of allegations (which is the longest and the most detailed group) is dedicated, once again, to the already-dismissed-with-prejudice issue of denial of employment promotion and to Plaintiff's termination from the ranks of the UNICOR (which caused Plaintiff's transfer to employ at Lewisburg food services).  See Docket Entry No. 15, at 5.  It appears that Plaintiff's systemic repeat of these already-dismissed-with-prejudice claims disregards the Court's prior ruling.  These claims have been dismissed with prejudice and cannot be revived by restating them a third time.  Moreover, in

the event Plaintiff is of opinion that the Court erred in its legal finding that lack of employment promotion or transfer from one position to another cannot qualify as a violation within the meaning of Section 1983, Plaintiff's remedy shall not be a repeat of the dismissed claims but a timely appeal of the Court's finding to the United States Court of Appeals for the Third Circuit.[3]  Accord Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp, 996 F. Supp. 409, 442 (D.N.J. 1998) (mere disagreement with the district court's decision is inappropriate on a motion for reconsideration, and should be raised through the appellate process) (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)).

The third and last group of allegations stated in Plaintiff's re-re-amended complaint reads as follows:

> Also while at Lewisburg camp, I broke my left hand and was given an x-ray, a splint and [pain killers] but no other form of treatment.  I have been suffering from pain from [the date of the alleged brake] until August 20, 2009, and was not seen for pain in left hand and numbness in left pinky and ring fingers.

---

[3]  The same applies to Plaintiff's claim that he spent 27 days in a Special Housing Unit awaiting transfer from one prison facility to another.  Plaintiff has no constitutional right to being confined in prison general population: even solitary confinement is constitutional unless it lasts for an extremely long period of time.  See Sandin v. Conner, 515 U.S. 472, 478 (1995); Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976).

These allegations appear facially deficient, not only because Plaintiff: (a) failed to clarify which particular Defendant(s) he faults for these events; and (b) did not transactionally relate these claims to his original claims, but also because -- even with these shortcomings being factored out -- Plaintiff's allegations fail to state a cognizable claim.

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment.   The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see  Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the

severity of the crime warranting imprisonment.  Rhodes, 452 U.S. at 346, 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

Thus, to prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants whom he names were deliberately indifferent to his serious medical needs.  See Estelle v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Persistent *severe* pain qualifies as a serious medical need.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse, 182 F.3d at 197.  Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate

18

indifference that is actionable.  See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993).  Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates.  See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied 486 U.S. 1006 (1998). However, neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures can amount to cruel and unusual punishment.  See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment do not state Eighth Amendment claims).

Here, Plaintiff asserts that, on the date of the alleged injury of his hand, he was given an x-ray, had a splint installed and was provided with painkillers.  In other words, he was given immediate medical care, and his complaint is effectively that he was not given "something else," because he would have prefer some "more" treatment, although Plaintiff does not even specify what treatment he was denied.

19

The Eighth Amendment does not entitle Plaintiff to getting any particular treatment or "more" treatment, it merely prevents the prison officials from being deliberately indifferent to Plaintiff's serious medical needs.  These needs were duly treated.  <u>Accord</u> 2009 U.S. Dist. LEXIS 66278 (S.D. Miss. 2009)(where an inmate broke his wrist, an x-ray, a splint and pain killers were deemed sufficient treatment for the purposes of the Eighth Amendment).

Similarly, the United States Constitution does not guarantee Plaintiff a painless healing process; in fact, the modern medicine cannot provide Plaintiff with such a guarantee. Therefore, the fact that Plaintiff experienced some pain during the healing process does not itself give rise to legal liability.  Moreover, Plaintiff's allegation that he "was not seen for pain" fails to state a claim, since Plaintiff does not assert that the pain was severe, and that he actually apprised any prison official about the pain but was deliberately denied treatment.[4]

In light of the foregoing, none of Plaintiff's instant allegations state a cognizable claim under the Constitution.

---

[4]  The only detail he provides is that he experienced the "numbness" sensation in two fingers of his hand (which, seemingly, remained fully operable regardless of the sensation). The mere numbness sensation, however, cannot qualify as a serious medical need, not to mention that Plaintiff fails to assert that he informed any prison official of this numbness.

Having examined Plaintiff's allegations stated and restated in four rounds of pleadings, the Court finds that extending yet another leave to amend is futile. "Allowing leave to amend where 'there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced' . . . would frustrate Congress's objective" to filter out lawsuits that have no factual basis. Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 164 (3d Cir. 2004) (quoting GSC Partners CDO Fund v. Washington, 368 F.3d 228, 246 (3d Cir. 2004)); accord Cybershop.com Sec. Litig., 189 F. Supp. 2d at 237 (the procedural Rules "would be 'meaningless' if judges liberally granted leave to amend on a limitless basis") (citing Miller v. Champion Enters., Inc., 145 F. Supp. 2d 871, 872 (E.D. Mich. 2001)). Where the plaintiff had already amended plaintiffs complaint and yet failed to allege sufficient facts, the courts may find that "[t]hree bites at the apple is enough," and conclude that it is proper to deny leave to replead. Salinger v. Projectavision, Inc., 972 F. Supp. 222, 236 (S.D.N.Y. 1997) (citing Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2 (2d Cir. 1996), and Fisher v. Offerman & Co., Inc., 1996 U.S. Dist. LEXIS 14560 (S.D.N.Y. 1996)). Here, Plaintiff had *four* bites at the apple, but -- after chewing it down to the core -- still produced no claim, while disrearding the Court's previous rulings and guidance. Consequently, the

21

Court will dismiss Plaintiff's re-re-amended complaint with prejudice.

### III. <u>MOTION TO APPOINT COUNSEL</u>

Plaintiff's motion to appoint counsel will be dismissed as moot. If anything, the motion verifies lack of facts supporting Plaintiff's claims, since the motion reads: "[D]iscovery [is] needed to translate understanding of law into presentation of proof and to avoid refiling re-re-re-amended [pleadings]." Docket Entry No. 16, at 3.

The Supreme Court in <u>Iqbal</u> unambiguously guided:

> [T]he question [of sufficiency of] pleadings does not turn [on] the discovery process. <u>Twombly</u>, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint asserts some wrongs] "generally," [<u>i.e.</u>, as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

Here, Plaintiff seeks to take the path expressly prohibited by <u>Iqbal</u>, <u>i.e.</u>, to obtain a counsel in order to have that counsel to first conduct discovery and then affix the legal labels to whatever the counsel discovers. However, Plaintiff is not entitled to gather evidence to prove a claim before he can be held to the standard of pleading of Rule 8. Instead, his Complaint must include a "showing" that he is entitled to relief, whatever the label

of his claim may be.  See In re Ins. Brokerage Antitrust
Litig., 2007 U.S. Dist. LEXIS 73220, at *154 (D.N.J. Sept.
28, 2007) (citing Seville Industrial Machinery Corp. v.
Southmost Machinery Corp., 742 F.2d 786, 790 n.5 (3d Cir.
1984), for the proposition that the plaintiff must assert
actual facts rather than express willingness to assert any
claim the court approves).  Moreover, Plaintiff has shown
himself to be capable of representing himself and
expressing what happened to him; but the result of his
expressions on repeated occasions, is that he does not have
a meritorious case to bring.

**IV.   CONCLUSION**

     For the foregoing reasons, Plaintiff's re-re-amended
complaint will be dismissed with prejudice.  Plaintiff's motion
for appointment of pro bono counsel will be denied as moot.

     An appropriate Order accompanies this Opinion.


                              **s/ Jerome B. Simandle**
                              Jerome B. Simandle
                              United States District Judge


Dated:  **March 8, 2010**